58 CCPA

**In re Frank JACUZZI.**

**No. 8418.**

United States Court of Customs and Patent Appeals.

Feb. 4, 1971.

Edward Brosler, Oakland, Cal., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Leroy Randall, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to upon reconsideration, affirming the rejection of claims 6–8 and 10–13 of appellant's application entitled "Marine Jet

Pump-Out and Fire Fighting Equipment." [1] Claims 2, 4 and 5 were allowed by the examiner. Appellant, as stated in his brief, waives his right of appeal as to claims 9 and 14. It is noted that these two claims are not set forth in appellant's notice of appeal.

The application relates to a means of assuring effective suction at an intake hose line for a pump-out means, where the pump is connected to two separate intake sources. It appears that the primary purpose of the apparatus relates to the first intake source, its function being to provide a jet propulsion for a boat with steering means being incorporated.

The device is shown in Figs. 1–4 of appellant's application.

Fig. 1.

Fig. 2.

[A3596]

---

1. Serial No. 461,972 filed June 7, 1965.

Fig.3.

Fig.4.

[A3595]

Steering is accomplished by means of rudder 41 attached to tiller 43. Propulsion forward is effected by means of a jet pump assembly 15 (Fig. 1) having an intake opening 9 (Figs. 2 and 4) in the hull bottom 7 of a vessel and a discharge opening 13 through the transom 11. Reversing of direction is accomplished by lowering reversing gate 45 which changes the direction of thrust. Intake hose line 57 is used as a pumping out means with strainer head 63 (Fig. 2) positioned in whatever area pumping is desired. The water withdrawn from the area being pumped out then mingles with the water entering through bottom opening 9 of hull bottom 7 (Fig. 4).

Pressure hose line 93 (Fig. 1) is connected downstream of the pump, and valve means 95 (Fig. 4) may be used to block the main discharge through the transom, thus enabling the output of the pressure hose line to be increased so as to enhance more effective use for fire fighting purposes. Smaller hose line 111 (Fig. 1) is available for use where a smaller output of water is needed. The specification states:

Flow connecting the intake hose line 57 to the suction line casting 17, places the hose line in communication with the suction end of the pump 19, but does not necessarily result in the development of sufficient suction at the point of coupling, to function effectively for all purposes. * * * [T]o assure effective suction at the point of connection of the intake hose line to the suction line casting, I provide an interceptor baffle 67 [Fig. 2] in the suction line, at any location between the coupling of the intake hose line and the bottom opening 9 * * *.

* * * [S]uch baffle * * * may be made a part of the means for coupling the intake hose line to the suction line casting, * * * [which] may be formed with a top side opening, bordered by a wall 71, which may or may not be extended by a collar 75, adapted to mount the coupling 59, and from which coupling downwardly ex-

tends the baffle 67. Where the jet propulsion drive involves a drive shaft 85 in the path of the baffle, the baffle may be provided with a deep notch 87 * * * of sufficient depth to permit the baffle to straddle such shaft.

The claims on appeal are apparatus combination claims, and were treated by the examiner and the board as a group. It appears that the claims will stand or fall together. Claim 6 is illustrative:

   6.  In combination,

      a jet propelled vessel comprising

      a hull having a bottom provided with an intake opening, and a transom,

      a jet pump assembly comprising a pump, a suction line leading to said pump from said bottom opening, and pump discharge coupling means leading to said transom,

      means for steering said vessel,

      means for reversing in varying degrees, said discharge, to effect and control reverse direction of movement of said vessel,

      and pump-out means utilizing said jet pump assembly, said pump-out means including

      a flow connection into said suction line, said flow connection comprising

      an intake hose line connected at one end to said suction line and having its other end free for manual placement, and a baffle within said suction line between said flow connection and said bottom opening, to partially intercept the otherwise normal flow into said pump through said bottom opening, and provided [sic] effective intake flow through said intake hose line.

The references relied upon below are:

| Parsons | 3,248,876 | May 3, 1966 |
| Goehler | 3,266,733 | August 16, 1966 |
| Riber (Great Britain) | 357,478 | September 24, 1931 |

Parsons discloses a jet propulsion assembly which may be employed for driving a vehicle in water, which consists of an assembly having an intake, a discharge end, a pump within housings, steering means, reversing means, pump-out means, and a discharge hose which may be connected downstream of the pump housing for producing a flow of water under pressure when the boat is to function as a fire boat, which hose may have a valve therein.

Riber discloses a boat bailing device consisting of a line fitted with a hand pump. The patent states that "water can be pumped from the boat into the sea" and that the end of the conduit "which opens into the sea being turned in the direction of the stern * * * so that while the boat is in motion, the suction effect produced at the nozzle of the conduit will tend to maintain the boat free of water." It is further stated that when the boat is in motion "the nozzle of the pipe D will be subjected to suction, and, after the conduit has been filled with water by means of the pump *and if the speed of the boat* is high enough, the water will continue to flow past the pump valves, and the boat will be automatically bailed." (Emphasis supplied.)

In his final rejection, the examiner rejected the claims under 35 U.S.C. § 103 as unpatentable over Parsons in view of Riber. In his Answer, the examiner added Goehler to the rejection in order to show another feature of the invention, but as appellant states in his brief and the solicitor stated in oral argument, Goehler is not important to the issues involved in this appeal and a discussion of that reference is not deemed necessary. In regard to the combination of Parsons and Riber, the examiner found nothing unobvious in placing a baffle at the end of the intake of the hose line to provide greater suction for the intake hose line and lesser suction for the opening in the bottom of the vessel.

In sustaining the rejection of the appealed claims, the board stated:

    The patentability of claims 6 through 8 and 10 through 13 is predicated on the addition of "a baffle within the suction line between the flow connection and said bottom opening." Parsons discloses a suction line

*but no baffle and Riber is relied upon for its teachings of the use of a baffle in connection with a suction line.* Although the siphoning action of Riber's device would be operative without a baffle (D), he uses such element to prevent water from flowing into pipe B and to thereby assure a siphoning action. The addition of such a baffle to Parson's device, adjacent his opening 60a, would be an obvious application of such element to produce the same result. For the purpose for which the Riber patent has been cited, we consider it pertinent. * * * We do not consider appellant's use of a baffle to be unobvious within the meaning of 35 U.S.C. § 103. [Emphasis added.]

In aid of the discussion to follow, we deem it pertinent to reproduce the drawing of the Riber reference:

[A3594]

It is clear that Riber relates to a means for bailing out a boat, which means has no relation to propulsion in driving the boat. Hand pump A is used for normal bailing while the boat is standing still and to prime the bailing system while the boat is moving forward. If the boat travels forward at a sufficient rate of speed, the flow of water past nozzle D results in a reduction in pressure at the outlet end of the nozzle. This suction effect at the nozzle end of the conduit "will tend to maintain the boat free from water." Riber states:

* * * [I]f the speed of the boat is high enough, the water will continue to flow past the pump valves, and the boat will be automatically bailed.

Thus, it appears that nozzle D functions solely to create suction at the nozzle opening when the speed of the boat is high enough. It does not function as a baffle in the sense appellant's interceptor baffle 67 functions.

Implicit in the decision of the board is a clear recognition of the fact that reliance must be focused on Riber for the essential elements which the board found absent in Parsons, namely, as set forth in all but one of the claims, "a baffle within said suction line between said flow connection and said bottom opening, to partially intercept the otherwise normal flow into said pump through said bottom opening, and provide effective intake flow through said intake hose line." The only claim not calling for a baffle, claim 12, calls for a "means" for performing this function. Riber's nozzle D performs no such function nor would it make obvious the use of a baffle which performs such a function.

Absent some teaching of using a baffle to perform the function appellant's baffle performs, we are not convinced that one skilled in the subject art would find it an obvious application to impose the Riber nozzle as an interceptor baffle in the Parson's device.

The decision of the board is reversed.

Reversed.

BALDWIN, Judge (dissenting).

The question of fact upon which the decision below was based was whether Riber's element D functions as a baffle. The Board of Appeals asserted that it did and appeared to base its conclusion as well as the conclusion that it would be obvious to employ a baffle in the Parsons's system on "the application of known principles of fluid flow." Now, without any more basis than the mere allegations of counsel, the majority has concluded that the allegation of fact made by the board was in error and *for this reason alone,* has reversed the board's decision.

I agree with the Patent Office that known principles of fluid flow mechanics would render obvious the use of a baffle in the Parsons's system (which is all appellant has done) and I would affirm on this ground. I also feel, however, that the majority has erred in law by not accepting a finding of fact made by the board and by treating statements of counsel as proof.